Thank you, Your Honor. At this time, I'd like to reserve two minutes for rebuttal. If you do so, just watch the clock. Thank you, Your Honor. This case presents the question of whether when a defendant objects to the voluntariness of field statements made and submits a declaration in support of that objection, whether he is at least entitled to an evidentiary gain. That's the primary issue. And two additional issues in this case that are presented is the first, whether a defendant should be compelled to incriminate himself by signing a fingerprint card and whether his refusal to sign that fingerprint card should be introduced in evidence against him at trial. The final question is whether a defendant should Did he refuse to sign? Your Honor, he refused to sign on the advice of counsel. He made a statement, he refused to sign? He did not make a statement, Your Honor. We don't know what he thought. The lawyer said, I will sign. How do we know that he's refused to sign? Well, Your Honor, at the fingerprinting, Mr. Joya was asked to sign and refused to do so through his counsel. Joe, all we know is that he speaks Spanish and his lawyer spoke Spanish to him and his lawyer and he had a conversation. We don't know if he refused. What we know is the lawyer said, I will sign for him. You're making an assumption as to the conversation. There's no record of what was said between them. Well, Your Honor, I was the attorney in question in this case and what happened was that he was asked to sign and that question was presented to him and then he was advised not to sign. You were the lawyer involved. Yes, Your Honor. Did you testify as to what was said between you and your client? I did not, Your Honor. So that's not in the record. We can only go by the record. And what do we have from the record? What we have from the record is he was asked to sign and then the lawyer said, you said, I will sign for him. That's all we have. Yes, Your Honor. However, the testimony at trial that was presented to the jury by the testimony of Mr. Beers, who was the fingerprint expert presented by the government, was that Mr. Joya in effect refused to sign the fingerprint card. In effect. Yes, Your Honor. Your Honor, I believe that the excerpt of record shows that Mr. Beers' testimony was that, was first, who was present at the fingerprinting, and second, he was asked whether Mr. Joya was asked to sign the fingerprint card, at which point he explained what had transpired. So, yes, Your Honor, there was not an actual refusal from Mr. Joya. That is correct. Are you making a constitutional argument here somehow? Yes, Your Honor. It is a constitutional argument. But I thought it was pretty clear that fingerprints are exemplars and are not entitled to constitutional protection. Well, Your Honor, I think under the Supreme Court case of Gilbert, this case is distinguished because in Gilbert those were exemplars and there was no claim in the briefs or in the decision that those were communicative in nature. The argument here, Your Honor, is that this is a communication. Mr. Joya was being asked to authenticate the fingerprint card by stating his identity, similarly to if you were asked to sign a receipt for a credit card bill, you are authenticating that and you are testifying, in effect, to your identity, saying this is me, these are my fingerprints. Those were not ordered by the Court, Your Honor. Mr. Joya was only ordered to give fingerprint exemplars which are not protected, and it's not my position that those are protected. However, by signing the fingerprint card, he was being asked to authenticate  himself. He refused to do so on the advice of counsel exercising his Fifth Amendment right not to incriminate himself. That, in turn, was introduced in evidence against him in violation of his constitutional right. Is the problem that signing it would indicate they're his fingerprints? It would be a claim to identity, Your Honor. And we have testimony of someone who actually put his hand on the document and said that it's his fingerprints. So what would be the prejudice here? We have an eyewitness that says these are his fingerprints, I was there, I put his hand on the document. How would you be prejudiced? Your Honor, I believe that the prejudice comes in the fact that one of the main defenses that was presented at trial was the issue of identity. I briefed the issue. However, I think that even in the government's closing argument at ER 286 and 287, the government stated to the jury, one of the issues here is identity. Do we have the right person? In the cross-examination of the A-file custodian, Agent Trombley, in ER 213 to 217, it was brought out that there were at least three different signatures in the A-file that the government purported to be Mr. Hoya's A-file. Therefore, I do believe that there was prejudice and this was not harmless, because when the jury was asked to consider reasonable doubt in whether identity of Mr. Hoya Guerrero had been proven and he had been linked to his A-file, they were also presented with the argument that his lawyer told him not to sign a fingerprint card claiming identity. Therefore, I think that he was prejudiced because this went directly to one of his arguments in his reasonable doubt proffer to the jury. I think that also several arguments were made as to identity in addition to the signature, Your Honor, including age discrepancy at ER 290 to 291 and also the fact, Your Honor, that there were two separate A-files for Mr. Hoya Guerrero. Agent Trombley testified that A-files are unique. There's only one A-file per person or subject. And it was brought out on cross-examination that there were actually two files for Mr. Hoya Guerrero. So I don't believe that it was harmless, Your Honor, and I do believe that prejudice resulted from this introduction of this evidence. The second issue, Your Honor, is whether Mr. Hoya's exercise of his Fifth Amendment rights in order that only voluntary statements should be used against him. He submitted a declaration, and I believe this is briefed, in compliance with Local Rule 47 and in support of his objection to the voluntariness of his field statements. Despite defense counsel's repeated requests for an evidentiary hearing, he was not given that. But didn't the Court find that you did not present any contested issue of fact, and so there was no need for an evidentiary hearing? Well, Your Honor, I don't think the district court made that finding. I think that another linked issue, and I'm going to answer the question, is that there were no findings as to voluntariness that were made on the record. And as required by Federal Rule of Criminal Procedure 12 and Prieto Via, another case that I briefed in the 28-J letter, those findings are required. I don't think that the district court said that there's nothing here. I just don't. I think there's a vacuum. What he said was that you weren't entitled to an evidentiary hearing because the declaration that you submitted was not sufficient under HAL, which requires sufficient evidence of a contested issue of fact. Well, Your Honor, I think that that's an incorrect – that's an incorrect assessment of the declaration. And the reason is, is because it's under 3501 and also Jackson v. Deno. It's clear that it's the government's burden to prove the voluntariness of statements or a confession before introducing it into evidence. Mr. Hoyer, again, submitted the declaration which alleged facts that if true, such as he did not understand what was being said to him and he was not read any rights whatsoever, I think that's also in the ER. But those are factors that go directly to the 3501 analysis. And that – well, knowing that it's the government's burden to prove the voluntariness of statements, that those facts alleged, if true, would not allow a judge to rule by a preponderance of the evidence that those statements were voluntary. And, Your Honor, I see that I have two minutes left. I'd like to reserve. You may reserve. Thank you. May it please the Court. Good morning, Your Honors. My name is Stephen Tokars for the United States. Your Honors, the record is clear in this case that the defendant received a fair trial in the district court. The jury did find him guilty beyond a reasonable doubt, and his sentence was properly imposed. And for those reasons, the government is asking that this Court affirm the conviction and sentence in its entirety. I would like to take, with the Court's permission, the issues as they were raised by the defense in order, the first being the evidentiary hearing. The record is clear in this case on pages 24 to 29 of the excerpts of record that the district court judge gave the defense counsel every opportunity to submit any contested fact to require this evidentiary hearing. He went through several scenarios, in fact, with the defense counsel of objective facts that could necessitate a hearing. And even at the end of the hearing, after initially denying the motion for the hearing, told defense counsel, you can submit a supplemental declaration, and I'll consider that. No supplemental declaration was ever submitted in this case. The only declaration that was submitted was insufficient on its face. And that's because the statements that were made in the declaration were subjective statements. They were statements that I did not feel free to leave. I felt pressured to talk. And clearly, under the existing law, it's an objective standard. There must be some objective facts to necessitate an evidentiary hearing. Otherwise, the hearing is not justified. And the record is clear in this case that the district court judge went above and beyond the facts, and those facts simply were never submitted to the court. What is the fact that the border agent handcuffed Mr. Joliot-Guerrero before questioning him, play into whether he was in custody or being coerced? Certainly, that is a factor in the consideration, and it's a factor that courts have recognized in the past. However, it is a totality of circumstances test. And this case is similar to two previous cases that this Court has decided, Galindo Gallegos and Cervantes Flores, which are cited in the government's papers. In those cases, under similar facts, especially in Cervantes Flores, the border patrol agent handcuffed the defendant after chasing him for three-quarters of a mile, subduing him, handcuffing him, then asking him to field questions to citizenship and right to be in the United States, and without giving random warnings. On appeal, the Court did find that that was permissible, even though the defendant was handcuffed. The government submits that this case is similar, and in fact, the facts are even more in favor of supporting the admission of the statements, because the defendant was not chased and subdued. He was encountered among a group of four people. He was among other people he was with. The border patrol agent was by himself. And for safety reasons, one border patrol agent against four unknown people he's just come upon in the field, the handcuffing of the defendant and the others was a step to take before asking the field questions. And the District Court, importantly, had all of these facts before it.  JUSTICE SCALIA. Counsel, one thing that bothers me about this issue is, apparently, if I read the record correctly, there were conflicting statements made to the Court by the assistant U.S. attorney. On the one hand, apparently, at the pretrial motion, there was an indication that there was no custody, no handcuffs, so forth. And then there was a statement that Agent Bryan detained and handcuffed all four people, including Hoya. What's going on there, and how can you help us deal with that? MR. GARRETT. Your Honor, if there was a misstatement at some point during the motion hearing, I made its finding, made its ruling on the admissibility of these statements. It did have the proper facts before it, that being that the defendant was, in fact, handcuffed. Any misstatement was unintentional and was certainly something that was not intended to in any way influence the District Court. More importantly, at the trial of this case, the full evidence came out, and the agent did testify, who handcuffed the defendant and took those statements, and he was subject to full cross-examination. And the District Court, at that time, of course, certainly had all of the facts before it, and it's clear from the record that was fully fleshed out that the facts before the court were that the defendant was handcuffed, but that he was in a group of four people, and that there was no other physical force that was used before the field questions. So I would submit any error in that was harmless and was unintentional. Your Honors, moving on to the issue of the fingerprint card. The fingerprint card was introduced as it is routinely done in these types of trials pursuant to the order of the court for the taking of fingerprint exemplars. There is no protection, of course, for fingerprint exemplars. And the only issue that arose, and it was, I would submit, a fairly innocuous issue when you look at the totality of the record. It was a very limited part of the trial. It arose when the card was introduced and there was an objection to the actual language on the card. The fingerprint expert had, in fact, written attorney refused client signature. And that's in the government supplemental excerpts of record. I wanted to make sure the court could see exactly what was introduced. That one line was on the card, but that was only on the card because the fingerprint examiner in his routine practice will always ask every defendant to sign the fingerprint card. However, at the trial, the only testimony that came out about this, and this is brief, is that the fingerprint examiner testified he didn't speak Spanish. He asked the defendant to sign it, but he believed he asked the defense counsel to interpret, to ask him to sign the card, and he said that he would. There was a hearsay objection. The court inquired, overruled the objection, and the government made no further inquiry after that. There was no more questions about this point, and there was no comment in closing argument about this fingerprint card, about this line, about attorney refusing client signature. The evidence at trial was that the fingerprint examiner did personally take the fingerprints. He saw the defendant place his fingerprints on the card. In court, the fingerprint examiner did point to the defendant and identify him as the man who put his fingerprints on the card. So the government submits, first of all, that there is no error. There is no constitutional error in this case. There's no implication of the Fifth or Sixth Amendment right, and any error that could conceivably be found is harmless. This was a very limited testimony, and the fingerprint examiner did personally identify the defendant as being the person who made those fingerprints on that card. What about the problem with the A file? Your Honor, I believe that defense, that counsel for appellant misspoke slightly. It's not true, and this is clear from the record from the A file setting's testimony, that every person only has one A file. And this was explained during the testimony. It is true that one A file number can only go to one person, but it is not uncommon for an individual to have more than one A file. And this is because A files are sometimes created at different locations at different times before another A file is discovered as being already in existence. And the A file custodian did explain this at trial, that what would happen in that case and what happened in this case is the A files, the separate A files for the same individual, are consolidated then into one master A file. And that's what happened in this case. So I believe that if you look at the record in this case from the testimony of Mr. Trombley, the A file custodian, you'll see that this discrepancy that was raised by appellant's counsel was explained very clearly. And the jury had that information before them, before they made their finding. I would also like to briefly touch on, if the court, with the court's permission, the recent case of Covey and Sandoval. This case decided just a few weeks ago, although not briefed in the papers, could conceivably impact this case. And that's because of the 28-J letter on it? No, Your Honor. There's been no 28-J letter submitted. I haven't submitted one. I don't believe defense counsel has submitted one. Well, don't we have a rule that requires that if you're going to cite a case in oral argument, you let us know about it in advance? I apologize, Your Honor. I was out of town on vacation when this case was decided and just returned this  With the leave of the court, I would ask either for the opportunity for several briefings. Before you leave the courtroom, be sure and go to the deputy clerk and indicate to him the full citation of the case. Make copies for all the members of the court as well as opposing counsel. Thank you, Your Honor. With leave of the court, would the court like me to address or simply to request leave for supplemental briefing? Well, make your argument while you're here. Okay. Just briefly, Your Honors, I believe that case is distinguishable. The case held that it is an apprendee violation if there has not been a finding beyond a reasonable doubt or an admission by the defendant on the date of his removal being after his prior aggravated felony. In this case, I believe we do have that finding necessarily implicit because this was a jury trial and the only introduction of the prior removal was one date. That was August 10, 2004. Wait a second. Was it alleged in the indictment? No, it was not. We have had opportunity to consider this case during the week, this past week, and that's problematic. It needs to be alleged in the indictment. Okay. How would it affect your case if we were to apply it? Would that require reversal? I don't believe so, Your Honor, and this is why. Because even though it was not alleged in the indictment, this Court has held in the past that when a jury makes a finding beyond a reasonable doubt on an element of a crime, it can also presume that other reasonable steps that it had to take to make that finding were also found beyond a reasonable doubt. Assuming Coby remains good law, we do not know that the jury specifically found as to the date, because there was not a special verdict. That is true. However, the only removal that was introduced into evidence was this date, and the jury does have to find beyond reasonable doubt a prior removal before they can find the defendant guilty. So the government's position is that they necessarily had to find that this removal on August 10, 2004 is the removal they relied on. It's the only one that's in evidence in the record.  Your time has expired. Thank you very much. Mr. Demick, you have some reserved time. Are you familiar with the Coby-Sandoval case? Yes, Your Honor. You didn't raise it in the 28-J letter? I did not raise it, Your Honor. Are you going to fix the case in any way? Well, Your Honor, I'm not prepared to address that issue. I will if the Court is asking me to. I was hoping with the latter two minutes to rebut the government's argument. Thank you, Your Honor. Your Honor, first of all, I want to bring it to full circle on the fingerprints issue. Mr. Beers' testimony at ER 238, the question presented to him was, when you finished your fingerprints from the defendant after rolling them onto the card, did you ask the defendant to sign the card? Mr. Beers' answer was, yes, I did. This naturally gave the jury information that he asked him to sign the card. When the card went into evidence, his signature was not there. What was there was attorney refused client's signature. This was prejudicial. It was not harmless because, again, at trial, the issue was identity. And I think that there was no curative instruction given. And so I don't think that this is an innocuous issue at all. I think that it was very prejudicial to Mr. Hoya, and it prejudiced him at trial. If his Fifth Amendment rights were not implicated, then at the very least his Sixth Amendment rights were because it says attorney refused client's signature. That's an improper piece of evidence that was introduced to the jury and went directly to the theory of his defense, which was identity. On the — Did you object on that specific ground? Your Honor, I objected in the middle of the direct testimony of Mr. Beers and told the Court that this was going into an area which was going to result in a constitutional violation under Doyle. I did not object under Sixth Amendment. However, I did raise that in my briefs. And I believe that I made the general argument that there was going to be a constitutional violation if this testimony was introduced. Finally, Your Honor, I think that the statements were prejudicial because Mr. Hoya Guerrero invoked when he was finally brought to the Border Patrol Station, and therefore the only confession that was presented at trial were the field statements. So that this wasn't harmless error and that there was no specific finding made on the record as required under Prieto via, and that Mr. Hoya's case should be remanded and reversed. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Wallace, O'scannlain, Wardlaw